E. W. Bliss Company (Limited), Appellant, *v.* United States Incandescent Gas Light Company, Respondent.

1. Contract for Manufacture of Goods — Place of Delivery — Notice of Completion and Opportunity for Inspection. Where a contract to manufacture such goods as metallic dies for the making of gas burners specifies no place of delivery and no agreement as to such place is shown, the goods are deliverable at the manufacturer's place of business or factory; and it is his duty, on completing the goods, to notify the other party and give him an opportunity to inspect them at the place where they were manufactured and determine whether they compare with the provisions of the contract, and if so, the duty arises to take the goods and pay therefor.

2. Contract for Manufacture of Goods — Notice of Completion and Opportunity for Inspection at Place of Manufacture — Delivery Conditional on Consent of Guarantor of Payment. In an action brought to recover the contract price for the manufacture of certain metallic dies, ordered from the plaintiff by the defendant according to sample, and which were to be used by a third party in making gas burners for the defendant, it appeared that the contract specified no place for delivery of the goods, and that a guaranty of payment, furnished by the defendant to the plaintiff, contained a proviso that the goods should not be delivered without a written order from the guarantor. It further appeared that, on completing the dies called for by the contract, the plaintiff sent a bill therefor to the defendant, and sent a letter to the guarantor requesting a written order from him to deliver the goods; no such order was furnished, but the defendant asked the plaintiff to have the dies taken to the third party's factory, where they were to be used, and have them tested there; this the plaintiff declined to do. It appeared that the dies could be inspected at the plaintiff's factory, and that all necessary tests to ascertain whether they complied with the contract could be applied there. *Held*, that the plaintiff had done all that could properly be required to impose upon the defendant the duty of taking and paying for the dies.

*E. W. Bliss Co. (Limited)* v. *U. S. I. G. L. Co.*, 78 Hun, 615, reversed.

(Argued April 13, 1896; decided April 28, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 21, 1894, which affirmed a judgment in favor of defendant, entered upon a decision of the court dismissing the complaint on trial at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Walter I. McCoy* and *Henry P. Starbuck* for appellant. Neither delivery nor tender of the dies was necessary to put the defendant in default. A notice that the dies were ready and a demand of payment was an offer to deliver upon payment, and was enough. (2 Kent's Comm. 505; *Lobdell* v. *Hopkins,* 5 Cow. 516; *Muckey* v. *Howenstine,* 3 T. & C. 28; *Higgins* v. *Murray,* 4 Hun, 565; *Morey* v. *Medbury,* 10 Hun, 540; *Hunter* v. *Wetsell,* 84 N. Y. 549; *Rutty* v. *C. F. J. Co.,* 52 Hun, 492; *Sawyer* v. *Dean,* 114 N. Y. 469; *Mitchell* v. *Cook,* 29 Barb. 243; *Wyckoff* v. *Anthony,* 9 Daly, 417; *Canda* v. *Wick,* 100 N. Y. 127.)

*George Walton Green* and *Eugene G. Kremer* for respondent. There was no proof that the dies were manufactured according to sample, or that they were constructed so as to fit the presses for which they were ordered. (*Mayer* v. *Dean,* 115 N. Y. 556; *Tile Co.* v. *Ahlers,* 18 N. Y. Supp. 883; 2 Benj. on Sales, 595, 596, 651; *Brown* v. *Edgerton,* 2 M. & G. 279; *Jones* v. *Bright,* 5 Bing. 533; *Aldrich* v. *Albin,* 1 Greenl. 120; *Sherwood* v. *Whittemore,* 11 M. & W. 347; 2 Greenl. on Ev. [15th ed.] § 111; *Wallman* v. *Socy. of Concord,* 45 N. Y. 485; *Levy* v. *Burgess,* 64 N. Y. 390.) There was no tender of the dies, nor any offer to deliver them according to agreement. (*Lester* v. *Jewett,* 11 N. Y. 453; *Parish* v. *U. S.,* 8 Wall. 489; 2 Kent's Comm. 506, 507; *Bronson* v. *Gleason,* 7 Barb. 472; 2 Pars. on Cont. [8th ed.] 765; *Goodwin* v. *Holbrook,* 4 Wend. 377; 2 Greenl. on Ev. [15th ed.] §§ 609, 610; *Taylor* v. *Cole,* 111 Mass. 363; *Howard* v. *Miner,* 20 Maine, 325.) The original contract, authorized by the board of directors, cannot be modified by a letter of the

treasurer unless equal authority is shown. (*N. F. S. B. Co.* v. *Bachman*, 66 N. Y. 261, 270; Morawetz on Corp. §§ 58–61; *Stilwell* v. *M. L. Ins. Co.*, 72 N. Y. 385; Abb. Tr. Ev. 314; *Ultey* v. *Donaldson*, 94 U. S. 48; *King* v. *Leighton*, 100 N. Y. 386; *Wallman* v. *Socy. of Concord*, 45 N. Y. 485.) There was no error in the rejection of letters not properly connected with the defendant. (Abb. Trial Brief, 207; *Nichols* v. *Kingdom I. O. Co.*, 56 N. Y. 618; *Berg* v. *Carroll*, 16 N. Y. Supp. 175; *N. F. S. B. Co.* v. *Bachman*, 66 N. Y. 261; *O'Brien* v. *Weiler*, 68 Hun, 64; *Lewis* v. *Duane*, 69 Hun, 28; *Adee* v. *Howe*, 15 Hun, 21.)

HAIGHT, J. This action was brought to recover the contract price for the manufacture of certain metallic dies ordered by the defendant. The complaint was dismissed at the conclusion of the plaintiff's testimony. The question presented is as to whether the evidence is sufficient to authorize a recovery.

On the 15th day of July, 1890, the plaintiff, through its superintendent, Charles L. Hart, at the request of the defendant's general manager, William J. Montgomery, made an estimate of the cost of constructing certain specified metal dies, to be used by the defendant in the manufacture of gas burners, known as No. 3 and No. 4, in which the price of each die was separately stated. The letter is as follows:

" GENTLEMEN.— As requested, we take pleasure in submitting the following prices for dies to be used in the manufacture of your No. 3 and No. 4 burners. The figures given are ' net.'

" It would take us about six weeks from the date of order to complete these tools." (Then follows an enumeration of the dies, with the prices stated for each.)

" Awaiting the pleasure of your commands, we are,
" Yours, truly,
" E. W. BLISS CO.,
" CHAS. L. HART,
" *Supt.*"

On the 7th day of August thereafter the defendant, through its general manager, answered as follows :

" Dear Sirs.— Referring to your estimate for making tools for our Nos. 3 and 4 burners, submitted July 15/90, would say same is accepted to be made per drawings and samples left with you this day, would ask your best endeavor to complete the order soon as possible, as we are anxious to begin the manufacture of the burners."

The plaintiff then offered to read in evidence two letters, one addressed to the president of the defendant, dated the next day, and the other to the defendant corporation, dated August 15th, 1890, calling for security, which were ruled out, under objection.   But under date of August 16th the defendant's general manager addressed a letter to the plaintiff, in which he stated that he had supposed that a guaranty or deposit would be expected, but complained that the plaintiff had not been more prompt in its notice to that effect.   It concluded by stating that " The matter will now have attention, and you will be advised of the action of the Co. soon as possible."

Thereafter the plaintiff received from the defendant the following :

                                        " New York, *Aug.* 26, 1890.
" Mess. E. W. Bliss & Co.,
                    " Brooklyn :

" Dear Sir.— I hereby guarantee the payment of the order for stamps, etc., heretofore sent you by the United States Incandescent Gas Light Company, of 7 Nassau St., in this city, and amounting to about $1,100.00, provided you will not deliver said goods without my written order to you, and also provided the goods are satisfactory.

                                        " Yours truly,
                                            " LEO LEVY."

The plaintiff replied :

" Your order per letter 7th inst. has been received and entered below, with our best thanks.   If the particulars are not correct, kindly advise us at once.   Boxing and cartage

will be charged extra at cost." (Then follows an enumeration of the dies and charges, as per letter of July 15th.)

The General Term appears to have reached the conclusion that the plaintiff undertook to manufacture dies from which a complete burner could be constructed, and, it appearing from the testimony that a complete burner could not be constructed from the dies enumerated, the plaintiff had failed to perform its part of the contract.

We do not so understand the agreement. The plaintiff in *no way undertook to manufacture all the dies and tools* necessary for the construction of the burners. It only undertook to manufacture certain specified and enumerated dies. It did not undertake to determine what dies were or were not necessary. Upon this subject the defendant's letter of July 28th, 1890, has an important bearing. It appears that the defendant had had some talk with the Manhattan Brass Company with reference to the manufacture of their burners, and in the letter referred to the defendant says :

"Referring to the estimate for the making of tools for the manufacture of the Clermont Burner, would say that *Brass Mfrs. consider that all the dies you mention will be necessary for the purpose*, and the Directors of our Co. have authorized our contracting for the tools."

It thus appears that the defendant had consulted with the Brass Manufacturing Company with reference to the dies desired by it, and that they required all of the dies mentioned in the plaintiff's letter of July 15th.

But this question was disposed of by a subsequent arrangement between the general managers of the respective companies, in which it was admitted that there had been a misunderstanding between them with reference to the number of dies necessary, and it was then arranged that the plaintiff should make two more perforating dies, at a price amounting to ninety dollars, and these dies were subsequently made, thus by their own agreement settling the question of the number and character of the dies to be manufactured.

It is now contended on the part of the respondent that the

original contract was not modified by the letter of the guarantor; that no tender of the dies had been made or proof that they were manufactured according to the sample.

The evidence is that the dies were manufactured to fit the presses of the Manhattan Brass Company; that they were manufactured from a sample burner furnished by the defendant, which the plaintiff had taken apart and constructed the dies so as to cut out each separate piece composing the burner. The testimony of the defendant's general manager, taken upon commission, is as follows:

"I, as manager of the defendant company, went to the Bliss Company, the plaintiffs in this case, and sought to make a contract with them to furnish the dies and stamps necessary to make the burner. I took them one of the burners manufactured in France. The verbal agreement was confirmed by letter, the date of which was August 7th, 1890, or about that time — to the best of my recollection that is the date — in which letter the price was stated for which the dies and stamps would be furnished by the plaintiff company. The directors of the defendant company had authorized this contract with the plaintiff company by a resolution of the Board, and, when so requested, *we gave security for the payment of the tools as desired,* and which was satisfactory to the plaintiff company."

It thus appears, from the testimony of the defendant's general manager, that the guaranty was furnished by the company, and it necessarily follows that it must be considered in connection with the letters constituting the contract. As we have seen, the guaranty was signed by Leo Levy. He was the treasurer of the defendant. In it he provides that the goods are not to be delivered without his written order. On referring to the letters it will be seen that no place of delivery is specified, and, in the absence of any agreement as to such place, the goods would be deliverable at the plaintiff's place of business or factory. It would thus become the duty of the plaintiff, on completing the dies, to notify the defendant and give it an opportunity to inspect the goods at the place they

were manufactured and determine whether they corresponded with the provisions of the contract. If so, it became the duty of the defendant to take them and pay therefor.

It appears to us that the plaintiff performed its duty in this regard. Most of the dies were completed by October 20th or October 23d, and they were all completed by October 29th. A bill for the goods was then sent to the defendant and a letter to Levy, stating that in accordance with his guaranty it was necessary for them to have a written order to deliver the goods, and concluded with the request, "Kindly see that we receive the same and oblige." No answer was made to this, but on October 27th the defendant addressed a letter to the plaintiff, in which it asked to have the tools taken to the Manhattan Brass Company and tested. This the plaintiff did not assent to, and we think such assent was not required. The dies could be examined, measured and inspected at the plaintiff's factory. All the necessary tests could be there applied. The plaintiff could not deliver over the tools without the written order of the treasurer and preserve his personal responsibility under the guaranty. Such an order had been requested, but had not been furnished.

Levy was an officer of the defendant and was the treasurer. He was the guarantor for the company. The letters addressed to him pertaining to the transaction were in effect the company's letters. They are enumerated in the notice to produce upon the trial, and we think they might properly have been received in evidence, especially that of October 20th.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur, except Gray, J., not voting.

Judgment reversed.